FRED A. WHITEHEAD and CAROL S. WHITEHEAD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Whitehead v. Commissioner
Docket No. 4303-78.
United States Tax Court
T.C. Memo 1980-508; 1980 Tax Ct. Memo LEXIS 78; 41 T.C.M. (CCH) 365; T.C.M. (RIA) 80508; November 17, 1980, Filed Fred A. Whitehead, pro se. James A. Jaeger, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1974 in the amount of $2,404.42. The only issue for decision is whether a payment of $11,600 made to petitioner Fred A. Whitehead by Southern Illinois University in 1974 is includable in gross income under section 61, I.R.C. 1954, [1] or is excludable from income under section 104(a)(2). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Fred A. and Carol S. Whitehead, husband and wife, resided in Kansas City, Kansas, at the time of the filing of their petition in this case. They filed a joint Federal income tax *80 return for the calendar year 1974 with the Office of the Internal Revenue Service at Austin, Texas. Fred A. Whitehead (petitioner) entered the University of Kansas in 1962 and received his bachelor's degree in 1965, graduating Phi Beta Kappa from that institution.Petitioner also received the Woodrow Wilson fellowship and Danforth fellowship in 1965. From 1965 to 1966, he was a Fulbright scholar in London, England. In 1967, petitioner received his master's degree, with highest honors, and received his Ph.D. in 1972 from Columbia University. On May 15, 1970, petitioner was hired as an assistant professor of English by Southern Illinois University at Carbondale (SIUC), located in Carbondale, Illinois. He was employed under a "continuing" appointment which implied that he would be reappointed on a year-by-year basis, unless he was given notice to the contrary. In each of the three succeeding years, petitioner was reappointed. His last reappointment at SIUC was for the 1973-1974 academic year and his salary was $11,600. The rights and responsibilities of an assistant professor at SIUC are set forth in the Southern Illinois University By-Laws and Statutes. The by-laws and *81 statutes were regarded as a part of petitioner's employment contract with the school.They provided that prior to the end of a four-year probationary period an assistant professor must be notified in writing either that he has been given tenure or that his appointment will not be renewed at the end of the fifth year. On December 7, 1973, petitioner received a letter from William E. Simeone, Chairman of the Department of English, stating that the Departmental Committee on Tenure and Promotions voted to recommend him for tenure. SIUC is a state university and operates on a fiscal year ending June 30. Its budget for each fiscal year is established by the Illinois Board of Higher Education. On December 4, 1973, the Board issued its budgetary report for the fiscal year 1975. It recommended a reduction in the base of the SIUC budget by $2,050,800 and an additional work incentive reduction in the amount of $587,400 along with increases in certain areas such as a 5 percent salary increase. These recommendations resulted in a total reduction in the operating costs budget of the university for the fiscal year 1975 in the amount of $2,746,700 while the total budget increased from $58 million *82 to $62 million. The Illinois Board of Higher Education gave the following three reasons for the budget reduction: (a) the decrease in enrollment and the projection for further decreases; (b) the unfavorable teacher-student ratio in terms of numbers of teachers to numbers of students; and (c) a higher than average cost of instruction per student factor and a lower credit hour production of some departments within the instructional units. In response to the proposed budget reduction, the SIUC Board of Trustees met on December 13, 1973, and declared that a demonstrably bona fide financial exigency existed at the school which would require program cutbacks or elimination and a reduction in all functions of the university, primarily in the academic program of the school. Accordingly, the Board of Trustees ordered a reduction in the personnel connected with the academic programs and it directed the administration of SIUC to effect such reduction. During December 1973, SIUC sent notices of termination effective June 30, 1974, to approximately 104 faculty members, including employees who had term, continuing, tenured and nontenured appointments. In a letter dated December 13, 1973, petitioner *83 received his official notice of termination. The letter stated that his dismissal was due to the financial exigency which existed at the university and was not due to any dissatisfaction with the performance of petitioner's assigned duties. It concluded that the university would assist him in any way possible to secure future employment. On January 18, 1974, the Board of Trustees of SIUC filed a "Complaint for Declaratory Judgment--Class Action" against six defendants who were each members of the six different classes of faculty members whose employment was terminated. The purpose of the suit against the terminated faculty was to obtain a final determination of the university's rights and responsibilities. In particular, the university requested that the court find that the financial exigency declared was bona fide and that the termination of the faculty members had been in accordance with the by-laws and statutes of the Board of Trustees of SIUC. Petitioner was not a named defendant and did not assume any active role in the lawsuit. After receiving notice of termination, petitioner, in a letter dated January 8, 1974, filed for a grievance hearing with President David Derge *84 of SIUC in accordance with Article VIII, Section 5, of the statutes of the Board of Trustees. The request for a grievance hearing was denied and the university administration stated that such a hearing would not be granted until a final decision was rendered by the court. In the early part of 1974, the university, through its Vice President for Academic Affairs and Provost, sought to negotiate a settlement with each of the 104 terminated faculty members. The basic guideline in negotiating each of the settlements was that the individual terminated would be paid an amount equivalent to one year's salary. In addition, other factors such as subbatical leave, accumulated sick and vacation time, pending retirement considerations, past salary inequities, along with other Affirmative Action considerations could be considered on an individual basis. In any event, settlement was conditioned upon a signed all-inclusive release from any and all claims of whatever nature the faculty member may have against the university, including but not limited to tort action such as defamation and loss of reputation. The requirement of a release of all claims against the university in return for settlement *85 was based on the fact that the university did not have the authority to pay wages for work not performed but it did have the authority to settle claims arising out of a dispute with the university. Therefore, the payment was a lump-sum settlement for any disputed claims and was not considered by the university to be salary or wages. Pursuant to the above-stated guidelines, petitioner, on May 1, 1974, signed the following release: RELEASE OF ALL CLAIMS
Know all men by these presents that I, Frederick Whitehead, in consideration of the payment of the sum of $11,600.00, by the Board of Trustees of Southern Illinois University, the receipt whereof is hereby acknowledged, have remised, released and forever discharged, and by these presents, do, for myself, and for my heirs, executors, administrators, and assigns, hereby release, remise, and forever discharge the Board of Trustees of Southern Illinois University, its agents, employees, successors, and assigns, of and from any and all manner of action or actions, either in law or in equity, contract, tort, or otherwise, which the undersigned might now have against the Board of Trustees of Southern Illinois University or its agents, *86 or employees, and more particularly the claims or demands arising out of the employment or the lack thereof, as an Assistant Professor in the Department of English. Said release is in settlement of any and all claims arising out of the employment or the lack thereof of Frederick Whitehead. It is understood and agreed that this settlement is the compromising of a disputed claim, and that the payment or any other agreements contained herein shall not be construed as an admission of liability on the part of the Board of Trustees or its agents, or employees, by whom liability is presently denied. This release contains the entire agreement between the parties hereto, and the terms of this release are contractual and not merely a recital. I further state that I have carefully read the foregoing release and know the contents thereof, and sign the same as my own free act. After petitioner left the university in 1974, he used the settlement proceeds to attend welding school and thereafter worked three years as an industrial welder in Kansas City. At the time of trial, petitioner was an administrator at the University of Kansas Medical Center. On June 27, 1974, the university *87 dismissed its class action suit against the terminated faculty members as most of them had either been rehired by the university or had accepted cash or other settlements. The university estimated that the total cost of the settlements was $440,000. Petitioner's requested grievance hearing was never held due to his signed release of all claims against the university. Petitioner did not include any part of the lump sum of $11,600 received in 1974 from SIUC when he signed the release in his income as reported on his Federal income tax return. In the notice of deficiency, respondent increased petitioner's taxable income for 1974 by $11,600, the amount of the lump-sum settlement he received from SIUC. OPINION The only issue for decision is whether the $11,600 payment made to petitioner by SIUC in 1974 is includable in his gross income under section 61 or is excludable from income under section 104(a)(2). Section 61 states that except as otherwise provided by statute gross income includes "all income from whatever source derived." [2] See Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 430 (1955). Petitioner, however, contends that the settlement he received *88 from SIUC is not taxable income because section 104(a)(2) specifically excludes from gross income "the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." [3] Respondent argues that the settlement was made in consideration of a variety of potential claims, including contract as well as tort or tort-type claims and the release signed by petitioner did not allocate the payment among these claims. Accordingly, the entire amount of the settlement must be included in gross income. We agree with respondent. *89 Section 104(a)(2) only excludes amounts received for damages on account of personal injuries or sickness. The Income Tax Regulations explain that "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Section 1.104-1(c), Income Tax Regs. In determining whether a settlement payment was intended as compensation for tort or tort-type damages, petitioner does not have to prove the validity of his claim. Seay v. Commissioner,58 T.C. 32, 37 (1972). What petitioner must establish is the nature of the underlying claim which was the actual basis for the settlement. The most important fact in amking the determination of the nature of the claim settled is the intent of the payor in making the settlement payment. Knuckles v. Commissioner,349 F.2d 610 (10th Cir. 1965), affirming a Memorandum Opinion of this Court; Agar v. Commissioner,290 F.2d 283 (2d Cir. 1961), affirming per curiam a Memorandum *90 Opinion of this Court. In determining the intent of the payor, we first look to the release signed by petitioner which was drafted by counsel for SIUC. It states that petitioner released the Board of Trustees of SIUC "from any and all manner of action or actions, either in law or in equity, contract, tort, or otherwise," which he might have against the Board and "more particularly the claims or demands arising out of the employment or the lack thereof, as an Assistant Professor in the Department of English." The second paragraph of the doument also states that "Said release is in settlement of any and all claims arising out of the employment or lack thereof of Frederick Whitehead." In exchange for the settlement payment, it is clear from the language of the release that SIUC wanted written assurance that it would be free from all claims of petitioner whether in contract, tort or otherwise which would arise out of the termination of petitioner's employment with the university. This language indicates that SIUC regarded the settlement payment as compensation for all of the claims which may have been brought by petitioner rather than as compensation for one particular type of claim. *91 The settlement guidelines set forth by the university also show that the payment was not secifically intended to compensate petitioner for tort or tort-type damages. The basic guideline was that each terminated faculty member was to be paid an amount equal to one year's salary. However, individual concerns could also be taken into account such as sabbatical leave, accumulated sick and vacation time, and pending retirement considerations. While it was the university's position to begin with salary and then consider any individual claims which the faculty member may have, it is significant that in this case petitioner received a settlement payment of $11,600, which was the same amount as his salary for the past academic year. Furthermore, there was no evidence presented that petitioner asserted any tort claims during the settlement negotiations with the university. On brief, petitioner argues that he "was denied a grievance hearing, contends that a bonafide financial exigency never existed, and has documented damages resulting from violations of his constitutional rights." Although petitioner attempted to present evidence that in fact there was not a bona fide financial *92 exigency at SIUC during 1973 and 1974 and that the university did not act in good faith in terminating his employment, he did not establish that the university intended the lump-sum payment as compensation for tort or tort-type damages suffered by petitioner. While we sympathize with petitioner's personal and professional frustration brought about by his termination at SIUC, nonetheless, the legal requirements for excluding payments of this type from gross income are clear. Even if petitioner had established, which he has not, that the university regarded a portion of the settlement as payment for tort or tort-type damages suffered by petitioner, we would be compelled to reach the same result because no allocation of the lump-sum payment was made. [4]
Petitioner also argues that if we find that the payment is properly includable in gross income, then *93 SIUC should be liable for petitioner's deficiency because SIUC failed to withhold tax on the payment. In this case we have jurisdiction only to redetermine the deficiency in petitioners' tax for 1974 as set forth in the notice of deficiency. Section 7442; section 6213(a). This Court does not have jurisdiction to grant equitable relief. Commissioner v. Gooch M. & E. Co.,320 U.S. 418 (1943); Continental Equities, Inc. v. Commissioner,551 F.2d 74, 82-84 (5th Cir. 1977), affirming on this issue a Memorandum Opinion of this Court. For these reasons, petitioner's argument that SIUC is liable for the deficiency is without merit. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless other stated.↩
2. Sec. 61 provides in part as follows: SEC. 61. GROSS INCOME DEFINED. (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived * * *. ↩
3. Sec. 104(a) provides in part as follows: SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS. (a) In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include-- (2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness;↩
4. In Gunderson v. Commissioner,T.C. Memo. 1979-99, Anderson v. Commissioner,T.C. Memo. 1979-309, and Evans v. Commissioner,T.C. Memo. 1980-142↩, we have previously held that settlement payments made to terminated faculty members by SIUC were includable in gross income.