ESTATE OF CHESTER H. MOORE, DECEASED, CALEDONIA MOORE, EXECUTRIX, and CALEDONIA MOORE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Moore v. Commissioner
Docket No. 8790-92
United States Tax Court
T.C. Memo 1994-4; 1994 Tax Ct. Memo LEXIS 1; 67 T.C.M. (CCH) 1925; January 5, 1994, Filed *1 Decision will be entered under Rule 155. For petitioners: Robert T. Cain, Jr.
For respondent: Carol Bingham McClure. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioners' Federal income tax in the amounts of $ 87,116.33 and $ 73,446.80 for the taxable years 1987 and 1988, respectively. At issue is whether punitive damages received in settlement of a lawsuit for malicious prosecution and invasion of privacy may be excluded from gross income pursuant to section 104(a)(2). [1] The facts have been stipulated. Petitioners are the Estate of Chester H. Moore, deceased, and Caledonia Moore (Mrs. Moore), the surviving spouse of Chester H. Moore (Mr. Moore). Mrs. Moore is petitioning the Court both in her capacity as an individual and in her capacity as executrix of her deceased husband's estate. She resided in Lufkin, Texas, at the time she filed the *2 petition with the Court. Mr. Moore died in April 1990. During his lifetime, he was the sole shareholder and president of Andover Corporation (Andover), a Texas corporation engaged in the business of highway construction. Andover was incorporated in January 1978 and remained in existence until its corporate charter was revoked in February 1983 for failure to pay franchise taxes. Sometime before February 26, 1982, two other corporate highway contractors and two of their employees falsely implicated Mr. Moore and Andover in a price-fixing scheme with respect to which they (the aforementioned corporations and individuals) had already been indicted and pled guilty. [2] On February 26, 1982, a Federal grand jury indicted Mr. Moore and Andover on charges of bid rigging in highway construction and mail fraud. The charges against Mr. Moore and Andover were subsequently brought to trial. Mr. Moore and Andover were acquitted by a jury of all the charges. *3 After his acquittal, Mr. Moore in 1983 filed a lawsuit against each of the parties who had wrongfully implicated him in the price-fixing scheme, seeking recovery of actual and punitive damages from each of the defendants. The causes of action in the lawsuit were for malicious prosecution and invasion of privacy, both of which are torts under Texas law. Mr. Moore brought suit in Texas district court both in his own behalf and in his capacity as beneficial owner of the assets of Andover. Mrs. Moore was also a plaintiff in the lawsuit. The State malicious prosecution and invasion of privacy suit was tried to a jury in May 1985. During the course of the trial, before the jury rendered its verdict, two of the four defendants (one corporate and one individual) settled with Mr. and Mrs. Moore for a total payment of $ 1,000,000. That amount was paid to them in 1985 and is not in issue in this case. The jury rendered a verdict against the remaining two defendants in the lawsuit, and awarded Mr. Moore, individually and as successor in interest to Andover, compensatory damages of $ 2,898,000. It also assessed a total of $ 3,000,000, in punitive damages against the two remaining defendants, *4 $ 1,000,000 against the corporate defendant, Reynolds-Land, Inc., and $ 2,000,000 against defendant O.C. Land. After the jury verdict, but before entry of judgment, the two remaining defendants negotiated a structured settlement with the Moores, the terms of which were as follows: The defendants agreed to pay $ 2,750,000 in cash during 1985 and to purchase an annuity with a present value in 1985 of $ 1,700,000, pursuant to which Mr. Moore (or his estate or beneficiaries, in the event of his death) would receive $ 223,523.13 per year for a period of 15 consecutive years, commencing in September 1986. The $ 2,750,000 cash amount was in fact paid to the Moores during 1985 and is not at issue in this case. Mr. and Mrs. Moore received payments of $ 223,523.13 in each of the years 1987 and 1988, in accordance with the terms of the annuity. They did not, however, report any part of the annuity payments as income on their joint Federal income tax returns (Forms 1040) for either of those years. The Commissioner issued a notice of deficiency to petitioners for the taxable years 1987 and 1988. The Commissioner determined, inter alia, that the full amount of the annuity payments was includable *5 in petitioners' gross income for each of those years. [3] Petitioners and the Commissioner have, however, since stipulated that 49 percent of each $ 223,523.13 annuity payment, i.e., $ 109,526.33, represents compensatory damages and as such is excludable from gross income, pursuant to section 104(a)(2), for each of the years at issue. The remaining 51 percent or $ 113,996.80 of each of the annual $ 223,523.13 of annuity payments received in 1987 and 1988 under the structured settlement represents punitive damages. There remains in issue, therefore, whether the $ 113,996.80 component in each year representing punitive damages is excludable from gross income pursuant to section 104(a)(2). Section 104(a)(2) provides: SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS (a) In General. -- Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., *6 expenses) for any prior taxable year, gross income does not include -- * * * (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness;
The applicable Treasury regulations in turn provide that the statutory language "damages received * * * on account of personal injuries" includes damages in respect of any claim "based upon tort or tort type rights" ( section 1.104-1(c), Income Tax Regs.). That interpretation of the statute is now well established. In United States v. Burke, 504 U.S.    ,    , 112 S. Ct. 1867, 1870 (1992), the Supreme Court quoted with approval the statement in Threlkeld v. Commissioner, 87 T.C. 1294, 1305 (1986), affd. 848 F.2d 81 (6th Cir. 1988), that "The essential element of an exclusion under section 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor." Moreover, it is also well settled that the tort claim need not necessarily be one involving physical injury. Roemer v. Commissioner, 716 F.2d 693, 697 (9th Cir. 1983), *7 revg. 79 T.C. 398 (1982) on other grounds. And it is now clear that section 104(a)(2) covers damages received for injuries based upon defamation of the claimant's reputation, whether personal or business. Threlkeld v. Commissioner, supra.Indeed, apart from the punitive damages in the present case, the Government has not challenged the applicability of section 104(a)(2) to the portions of the amounts received that were allocable to compensatory damages. At issue is merely whether the punitive (or exemplary) damage component of each such amount is also covered by section 104(a)(2). In Miller v. Commissioner, 93 T.C. 330 (1989), this Court held that punitive damages were excluded from gross income by section 104(a)(2), but our decision was reversed on appeal, 914 F.2d 586 (4th Cir. 1990). In the course of its opinion the Fourth Circuit relied, inter alia, upon Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955), which this Court had undertaken to distinguish, and upon which the Government relies in the present case. The matter *8 of punitive damages arose again in Horton v. Commissioner, 100 T.C. 93, 96 (1993), where this Court refused to accept the Fourth Circuit's reversal of our decision in Miller, stating: After careful consideration of the views of the Fourth Circuit, we reaffirm our holding in Miller that punitive damages received as a result of a personal injury claim are excludable under section 104(a)(2). The beginning and end of the inquiry should be whether the damages were paid on account of "personal injuries". This inquiry is answered by determining the nature of the underlying claim. Once the nature of the underlying claim is established as one for personal injury, any damages received on account of that claim, including punitive damages, are excludable. [Footnote omitted.]
We are bound by Horton. Here, the nature of Mr. Moore's underlying claim was for personal injury, and "any damages received on account of that claim, including punitive damages, are excludable." Id. at 96. The Government again relies upon Commissioner v. Glenshaw Glass Co., supra, but this Court has *9 already distinguished that case in Miller, and in the opinion in Horton has refused to follow the Court of Appeals' reversal of Miller in cases not appealable to the Fourth Circuit. Horton controls here. We note that Congress in 1989 amended section 104(a)(2) so as to render it inapplicable to punitive damages not involving physical injuries. Section 7641 of the Omnibus Budget Reconciliation Act of 1989 (OBRA 1989), Pub. L. 101-239, 103 Stat. 2379 provides: SEC. 7641. LIMITATION ON SECTION 104 EXCLUSION. (a) GENERAL RULE. -- Section 104(a) (relating to compensation for injuries or sickness) is amended by adding at the end thereof the following new sentence: "Paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." (b) EFFECTIVE DATE. -- (1) IN GENERAL. -- Except as provided in paragraph (2), the amendment made by subsection (a) shall apply to amounts received after July 10, 1989, in taxable years ending after such date. (2) EXCEPTION. -- The amendment made by subsection (a) shall not apply to any amount received -- (A) under any written binding agreement, court decree, or mediation *10 award in effect on (or issued on or before) July 10, 1989, or (B) pursuant to any suit filed on or before July 10, 1989.
Plainly, these new provisions do not govern here as to punitive damages received even after the generally effective date of July 10, 1989, by reason of the exception in section 7641(b)(2) of OBRA 1989. The government does not contend otherwise. Accordingly, since this case is governed by section 104(a)(2) as in effect prior to the 1989 amendment, our opinion in Horton compels a decision in petitioners' favor on this issue. In order to give effect to various concessions, Decision will be entered under Rule 155. Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.↩
2. The parties implicating Mr. Moore and Andover in the price-fixing scheme were, respectively, Reynolds-Land, Inc., O.C. Land, B.J. Johnson, and E.W. Hable & Sons, Inc. As discussed infra, each of these parties was subsequently named as a defendant in Mr. Moore's and Andover's lawsuit for malicious prosecution and invasion of privacy.↩
3. The other adjustments in the deficiency notice have since been settled and are not at issue herein.↩