**Kari LANE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV–94–1833–R.

United States District Court,
W.D. Oklahoma.

Aug. 2, 1995.

Patrick M. Castleberry, Scott C. Sublett, Kline & Kline, Oklahoma City, OK, for plaintiff.

Ronny D. Pyle, U.S. Attorney's Office, Oklahoma City, OK, Charles P. Hurley, U.S. Department of Justice, Tax Division, Washington, DC, for defendant.

### ORDER

DAVID L. RUSSELL, Chief Judge.

Before the Court are cross motions for summary judgment on Plaintiff's Complaint, pursuant to which Plaintiff seeks a refund, with interest, of $45,313.00 of federal income taxes paid to the Internal Revenue Service respecting Plaintiff's 1989 form 1040.

The material facts are not in dispute. Two issues are framed by the parties' motions and briefs in support of and in opposition to the motions for summary judgment:

1. Are all amounts paid under the Hartford–Autery Estate settlement agreement, including those received by Plaintiff, either includable as gross income and subject to federal income taxes or, alternatively, exempt from gross income under 26 U.S.C.

§ 104(a)(2) because the settlement agreement was silent as to the allocation of any amounts to particular claims and/or types of damages?

2. Does 26 U.S.C. § 104(a)(2) exempt punitive damages and/or post-judgment interest from gross income and federal income taxation?

Plaintiff in an initial argument asserts that the "settlement agreement" between her mother's estate (the "Autery Estate") and Hartford Accident and Indemnity Company ("Hartford") does not allocate any of the amounts paid by Hartford to any particular claims or kinds of damages and Defendant agrees. The parties, however, reach differing conclusions as to the effect of this failure to allocate. Plaintiff asserts that the Estate's claim which was the subject of the settlement agreement was for Hartford's bad faith refusal to honor the Estate's UM claim, which is a tortious personal injury to the Estate. Accordingly, Plaintiff asserts that all amounts received under the Settlement Agreement were "received . . . by . . . agreement . . . on account of personal injury," 26 U.S.C. § 104(a)(2) and were "received . . . through prosecution of a legal suit . . . based upon tort or tort type rights," Treas.Reg. § 1.104–1(c), and are therefore expressly exempt from gross income. Defendant on the other hand asserts that the absence of allocation within the settlement agreement of payment among the various claims that were asserted or among the elements of damages awarded by the trial court renders the entire amount paid includable as income, citing *Taggi v. United States*, 835 F.Supp. 744, 746 (S.D.N.Y.1993), *aff'd*, 35 F.3d 93 (2nd Cir. 1994); *Villaume v. United States*, 616 F.Supp. 185, 190 (D.Minn.1985); and *Whitehead v. Commissioner of Internal Revenue*, 41 T.C.M. (CCH) 365, 369, 1980 WL 4334 (1980). In the alternative Defendant asserts that Plaintiff has the burden of proving how the parties to the actual settlement allocated the payment among claims, citing *INDOPCO, Inc. v. Commissioner of Internal Revenue*, 503 U.S. 79, 84, 112 S.Ct. 1039, 1043, 117 L.Ed.2d 226, 233 (1992); *United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir.

1991); and *Doyal v. Commissioner of Internal Revenue*, 616 F.2d 1191, 1192 (10th Cir. 1980).

Plaintiff in the alternative and in opposition to Defendant's motion states as follows:

> If the settlement agreement is to be viewed in the context of the litigation at the time of settlement, then the Court may determine the character of each settlement dollar, logically by identifying which damage issues were foreclosed and calculable at the time of settlement, and which were not.
>
> Plaintiff's Brief in Support of her Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment at p. 12.

Plaintiff then explains that after trial, appeal, remand, the trial court's reduction of compensatory and punitive damages on remand, and the trial court's entry of judgment, the trial court's awards of contract damages in the amount of $600,000 and compensatory damages on the bad faith claim in the amount of $130,000 were final, and only the trial court's award of punitive damages on the bad faith claim in the amount of $300,000 was nonfinal since this was the only issue which was the subject of an appeal to the Tenth Circuit Court of Appeals when the parties settled the litigation by written agreement for $1,313,754. Plaintiff thus suggests that $600,000 of the settlement proceeds should be allocated to contract damages; $130,000 to compensatory damages; and $583,754 to punitive damages, representing a rough split between the first award of punitive damages in the amount of $900,000 and the reduced award, following remand, of $300,000 in punitive damages, the "possible appeal outcomes." Plaintiff asserts that no amount should be allocated to post-judgment interest because post-judgment interest was not calculable at the time the parties settled inasmuch as the unresolved amount of punitive damages prevented calculation of a total principal amount on which to compute interest. Plaintiff then asserts that all settlement amounts are excludable from income pursuant to 26 U.S.C. § 104(a)(2) and (3).

In asserting that the settlement proceeds allocable to punitive damages are exempt from gross income and income taxes under

Section 104(a)(2)[1], Plaintiff relies on that statutory provision, Revenue Ruling 75–45, the Sixth Circuit case of *Horton v. Commissioner of Internal Revenue*, 33 F.3d 625 (6th Cir.1994), and the United States Tax Court's rulings in *Miller v. Commissioner*, 93 T.C. 330 (1989) (reversed by the Fourth Circuit in *Commissioner of Internal Revenue v. Miller*, 914 F.2d 586 (4th Cir.1990)), and *Estate of Moore v. Commissioner of Internal Revenue*, 67 T.C.M. (CCH) 1925, 1994 WL 1705 (1994) (reversed by the Fifth Circuit in *Estate of Moore v. Commissioner of Internal Revenue*, 53 F.3d 712 (5th Cir.1995)), and attacks the reasoning and decisions of the circuit courts holding that punitive damages are not exempt under Section 104(a)(2). Defendant relies on the principle of narrow construction of exclusions from income, *Commissioner v. Jacobson*, 336 U.S. 28, 49, 69 S.Ct. 358, 369, 93 L.Ed. 477, 490 (1949), the circuit court cases of *Wesson v. United States,* 48 F.3d 894, 899 (5th Cir.1995); *Hawkins v. United States,* 30 F.3d 1077 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995); *Reese v. United States,* 24 F.3d 228, 231 (Fed.Cir.1994); and *Commissioner of Internal Revenue v. Miller,* 914 F.2d 586 (4th Cir.1990), and the United States' Supreme Court's pronouncement in *Commissioner v. Schleier,* 515 U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) that because liquidated damages under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.,* are intended to be punitive in nature, they "are not received on account of personal injury or sickness." *Schleier,* 515 U.S. at ——, 115 S.Ct. at 2165, 132 L.Ed.2d at 303–304.

A number of cases do hold that where a settlement agreement is silent as to what portion, if any, of settlement proceeds should be allocated to damages which are excludable from income under 26 U.S.C. § 104(a)(2), all of the settlement proceeds are considered income. *See, e.g., Taggi v. United States,* 835 F.Supp. 744, 746 (S.D.N.Y.1993), *aff'd,* 35 F.3d 93, 96 (2nd Cir.1994); *Whitehead v.*

*Commissioner of Internal Revenue,* 41 T.C.M. (CCH) 365, 369 (1980). Other courts have indicated a willingness to look at the allegations contained in the plaintiff's complaint, evidence and arguments presented at trial and the jury verdict, i.e., the status and outcome of any suit filed before settlement to determine what portion of settlement proceeds, if any, should be allocated to income and what portion, if any, is excludable from income. *See Commissioner v. Miller,* 914 F.2d at 592; *Glatthorn v. United States,* 818 F.Supp. 1548, 1551–52 (S.D.Fla.1993); *Villaume v. United States,* 616 F.Supp. 185, 187–89 (D.C.Minn.1985); *Miller v. Commissioner of Internal Revenue,* 65 T.C.M. (CCH) 1884, 1993 WL 28556 (1993) (on remand), *aff'd,* 60 F.3d 823 (4th Cir.1995); *Eisler v. Commissioner of Internal Revenue,* 59 T.C. 634, 640, 1973 WL 2521 (1973). *Cf. Knuckles v. Commissioner of Internal Revenue,* 349 F.2d 610 (10th Cir.1965) (in the absence of an express personal injury settlement agreement, intent of the payor as the purpose in making the payment is most important fact). Indeed, in *Glatthorn v. United States,* the United States District Court for the Southern District of Florida said:

When a lump sum settlement encompasses both tort and contract claims, an allocation must be made between and among the various claims. *If the parties themselves do not make the allocation in a settlement agreement, the court must do so.* *Eisler v. Commissioner,* 59 T.C. 634, 640 [1973 WL 2521] (1973). The Court should consider several factors, including the pleadings, the evidence, the terms of the settlement, and the intent of the payor. *See Threlkeld v. Commissioner,* 87 T.C. 1294, 1306 [1986 WL 22061] (1986), *aff'd,* 848 F.2d 81 (6th Cir.1988). "In a given case, any one of these factors may be ultimately persuasive or ignored." *Id.* "The nature of the payments ... is a question of fact to be decided from a consideration of all the factors surrounding the payment." *McKim v. Commissioner,*

---

1. In 1989, Congress amended Section 104(a) by the addition of the following sentence: "Paragraph (2) shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." 26 U.S.C. § 104(a).

The parties agree that the amended statute does not apply herein because the amendment is only effective for amounts received after July 10, 1989 and the settlement amount herein was fully paid on or about January 18, 1989.

40 Tax Ct.Mem.Dec. (CCH) 9, 12 (March 26, 1980) (citing *Knuckles v. Commissioner*, 349 F.2d 610, 613 (10th Cir.1965); *Agar v. Commissioner*, 290 F.2d 283, 284 (2d Cir.1961); *Seay v. Commissioner* [1972 WL 2542], 58 T.C. 31 (1972).

> *Glatthorn v. United States*, 818 F.Supp. at 1551 (footnote omitted) (emphasis added).

It is undisputed that following remand, the Autery Estate was awarded $600,000 in contract damages on its claim on the policy for uninsured motorists' benefits; $130,000 in compensatory damages on its tort claim for bad faith refusal to honor the estate's UM claim; and $300,000 in punitive damages on the bad faith claim.[2] It is undisputed that the trial court entered judgment awarding such amounts to the Estate on November 30, 1988 and that the only issue raised on appeal from that judgment, before a settlement was reached, was the propriety of the reduction in the amount of punitive damages, upon the initial remand, from $900,000 to $300,000. It is thus undisputed that the judgment in *Everaard v. Hartford Accident and Indemnity Co.*, No. CIV-84-1007-P, was final except as to the amount of the award of punitive damages as the time the Estate and Hartford entered into a settlement.

■ The only evidence of the settlement before the Court is a document entitled "Release and Satisfaction of Judgment and General Release" filed of record in *Everaard v. Hartford Accident and Indemnity Co.*, No. CIV-84-1007-P, on January 18, 1989. While Plaintiff asserts that the parties' agreement superseded all prior judgments and filed appeals, Plaintiff's Brief in Support of Her Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment at p. 7, the "Release and Satisfaction of Judgment and General Release" speaks for itself and is a clear and unambiguous expression of the parties' intent that Hartford's payment of $1,313,754.00 constitute complete and total satisfaction of the judgment entered against it in Case No. CIV-84-1007-P and "of any and all judgments, attorney fees, interests, costs and causes of action possessed, asserted and assertable" by the Autery Estate "arising out of decedent's death and [Hartford's] responsibility under its uninsured motorist's policy in relation to which judgment in question was obtained," Release and Satisfaction of Judgment and General Release at p. 2, and that Hartford be released from "every right, claim, debt, demand, action, cause of action," etc. which the Autery Estate had and might have relating to the payment of insurance proceeds and arising out of the dispute which was the subject of Case No. CIV-84-1007-P. *Id.* at p. 1.

Moreover, the Court agrees with Plaintiff that because the amount of punitive damages was unresolved at the time the parties entered into a settlement such that post-judgment interest was not then calculable, and because the amount of the settlement payment in excess of $730,000.00 (the amount attributable to contract and compensatory damages), or $583,754.00, is roughly one-half of the difference between the original award of punitive damages, $900,000.00 and the reduced award, upon remand, of $300,000, it is reasonable and logical to allocate $583,754.00 of the total amount paid in settlement to punitive damages.

In conclusion, the Court finds that the proceeds of the Hartford–Autery Estate settlement are be allocable and should be allocated as follows: $600,000 in contract damages for a claim on the Hartford policy for UM benefits; $130,000 in compensatory damages for Hartford's tortious, bad faith refusal

---

**2.** The $600,000 in contract damages represents the maximum amount of uninsured and underinsured motorist coverage under Carolyn Sue Autery's policy with Hartford. *See* Order *Everaard v. Hartford Accident and Indemnity Co.*, No. CIV-84-1007-P (W.D.Okla. November 22, 1988) (Exhibit "A" to Plaintiff's Brief in Support of Her Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment) at p. 11. The $130,000 in compensatory damages on the bad faith tort claim represented $100,000 "in the nature of compensation to plaintiff for loss of use of the $600,000," which was due to Hartford's failure to promptly pay the $600,000 claim, *id.*, note 3, and additional attorney fees of $130,000 for which plaintiff became obligated as a direct result of Hartford's bad faith refusal to timely pay the $600,000 claim on the policy. *Id.* at p. 12. The $300,000 in punitive damages were awarded to punish Hartford because of Hartford's conscious indifference toward plaintiff and "as an example to others to deter like conduct." *Id.* at pp. 14 & 16.

to pay UM benefits; and $583,754.00 in punitive damages on the bad faith claim.

■ Defendant does not take issue with Plaintiff's assertions that contract damages are excludable from income pursuant to 26 U.S.C. § 104(a)(3)[3] and that actual or compensatory damages for the tort of bad faith are excludable from income pursuant to 26 U.S.C. § 104(a)(2).[4] Defendant argues only that the entire settlement amount is includable as income because no allocation was made in the "settlement agreement," *see* above, and that "because the distribution represents Plaintiff's share of the punitive damages award and/or post-judgment interest, neither of which is excludable from income, Plaintiff is not entitled to a refund of the taxes at issue." Memorandum in Support of Motion of the United States for Summary Judgment at p. 3. Accordingly, the amounts of the settlement which the Court has determined are allocable and allocated to contract damages and compensatory damages for the tort of bad faith are excludable from income pursuant to 26 U.S.C. § 104(a)(3) and § 104(a)(2), respectively, and the only remaining question is whether the amount of the settlement proceeds allocable and allocated to punitive damages is excludable from income pursuant to 26 U.S.C. § 104(a)(2).

■ The Court is constrained by a recent pronouncement by the United States Supreme Court in *Commissioner of Internal Revenue v. Schleier*, 515 U.S. ——, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) to conclude that punitive damages are not "received on account of personal injury or sickness" and are therefore not excludable from gross income under Section 104(a)(2) of Title 26 of the United States Code. The Supreme Court in *Schleier* held that liquidated damages under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), because they are intended to be punitive in nature, are not received on account of personal injury or sickness. *Schleier*, 515 U.S. at ——, 115 S.Ct. at 2165, 132 L.Ed.2d at 303–304. Similarly, because the purpose of punitive damages under Oklahoma law, the law applicable to the *Everaard v. Hartford Accident and Indemnity Co.* case, is to punish the tortfeasor rather than to compensate a party, *see, e.g., Norman's Heritage Real Estate Co. v. Aetna Casualty and Surety Co.*, 727 F.2d

**3.** Section 104(a)(3) of Title 26 of the United States Code states that gross income does not include "amounts received from accident or health insurance for personal injuries or sickness...."

**4.** Case law supports Plaintiff's position that a bad faith claim is an action sounding in tort to recover for personal injuries. *See Wesson v. United States*, 48 F.3d 894, 897–98 (5th Cir.1995) (a bad faith claim against an insurer is a tort claim to redress a personal injury under Mississippi law); *Hawkins v. United States*, 30 F.3d 1077, 1079 (9th Cir.1979) (the parties agreed that under Arizona law, the plaintiffs' bad faith suit against their insurer was a tort action and that the plaintiffs suffered personal injuries as a result of the insurer's conduct). *Cf. Estate of Moore v. Commissioner of Internal Revenue*, 53 F.3d 712, 713 (5th Cir.1995) (Commissioner of Internal Revenue agreed that compensatory damages for malicious prosecution received as part of a settlement were excludable from income pursuant to 26 U.S.C. § 104(a)(2) as "damages received ... on account of personal injury.").

Under Oklahoma law, a claim against an insurer for bad faith delay in paying or refusal to pay an insured's claim is a tort claim. *See Christian v. American Home Assurance Co.*, 577 P.2d 899, 901 (Okla.1978). Where, as here, uninsured or underinsured motorist benefits are sought as a source of recovery for personal injury or wrongful death when an innocent victim cannot otherwise recover from the tortfeasor, damages in the nature of interest for the loss of use of the UM benefits and attorneys fees incurred in pursuing a tort claim against the UM insurer are "damages received ... on account of personal injury." *Cf. Carney v. State Farm Mutual Automobile Insurance Co.*, 877 P.2d 1113, 1119 (Okla.1994) (Insured in action against motorist and uninsured motorist insurer seeking recovery for personal injuries suffered in automobile accident is entitled to recover prejudgment interest pursuant to Okla.Stat. tit. 12, § 727(A)(2) on damages for personal injury caused by the tortfeasor in an amount not to exceed the policy limits, except where the insurer's delay in payment is unwarranted, so as to amount to bad faith); *Torres v. Kansas City Fire and Marine Insurance Co.*, 849 P.2d 407, 413–14 (Okla.1993) (where damages sought in action to recover under underinsured/uninsured endorsement on policy are "unquestionably by reason of personal injuries," that is, for wrongful death, even though the insurer's liability is based upon its contractually based duty to pay under the UM endorsement of the policy, the UM insurer is also liable for prejudgment interest pursuant to Okla.Stat. tit. 12, § 727(A)(2) because "such a suit is in essence nothing other than a suit to recover for personal injuries.").

911, 914 (10th Cir.1984), the portion of the settlement proceeds allocable and allocated to punitive damages and distributed to Plaintiff herein was not "received on account of personal injury" and thus is not excludable from income pursuant to 26 U.S.C. § 104(a)(2). Plaintiff argues that because the claim on which the punitive damages were awarded was one which sounds in tort, and an award of actual damages is necessary under Oklahoma law to support an award of punitive damages, punitive damages are necessarily "received on account of personal injury" and excludable under Section 104(a)(2) to the same extent that the underlying tort claim (for compensatory damages) is a personal injury tort claim. This argument is foreclosed by the following statement by the Supreme Court in *Schleier:*

> There are two independent requirements that a taxpayer must meet before a recovery may be excluded under § 104(a)(2). First the taxpayer must demonstrate that the underlying cause of action giving rise to the recovery is based upon tort or tort type rights; and second, the taxpayer must show that the damages were received on account of personal injuries or sickness.
>
> *Commissioner of Internal Revenue v. Schleier,* 515 U.S. at ——, 115 S.Ct. at 2167, 132 L.Ed.2d at 307.

Moreover, while there is some superficial appeal to Plaintiff's argument that "but for" the underlying personal injury tort, the Autery Estate would have had no claim for punitive damages and thus that punitive damages must be considered "received on account of personal injury," the Court agrees with the Fourth Circuit's reasoning in *Commissioner of Internal Revenue v. Miller,* 914 F.2d 586 (4th Cir.1990) and those circuit courts which have followed *Miller* in rejecting this argument.

Plaintiff's motion for summary judgment is **GRANTED** in part, to the extent that the settlement proceeds may be and are allocated to $600,000.00 in contract damages, $130,000.00 in compensatory damages on the tort claim for bad faith and $583,754.00 in punitive damages and to the extent that Plaintiff's distribution of her share of the contract damages and compensatory bad faith dam-

ages are excludable from gross income pursuant to 26 U.S.C. § 104(a)(3) and § 104(a)(2), respectively. Plaintiff is entitled to a refund of income taxes paid on her distributive share of the $730,000 of the settlement proceeds attributable to contract damages and compensatory bad faith damages. Plaintiff's motion is **DENIED** insofar as Plaintiff asserts that the settlement proceeds attributable to punitive damages and her distributive share thereof are excludable from income pursuant to 26 U.S.C. § 104(a)(2). Defendant's motion for summary judgment is likewise **GRANTED** in part and **DENIED** in part. Defendant's motion is **GRANTED** with respect to Plaintiff's distributive share of $583,754.00 of the settlement proceeds attributable to punitive damages. Plaintiff is not entitled to a refund of income taxes paid on said amount. In all other respects Defendant's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**