T.C. Memo. 1996-276


UNITED STATES TAX COURT


LESLIE R. FOSTER and MATTIE J. FOSTER, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 19932-94, 19934-94,    Filed June 13, 1996.
10669-95.


<u>Leonard Lanny Leighton</u>, for petitioners.[2]

<u>Joni D. Larson</u>, for respondent.


MEMORANDUM OPINION

TANNENWALD, <u>Judge</u>: Respondent determined the following

deficiencies in the 1993 Federal income taxes of Leslie R. Foster

---

[1] Cases of the following petitioners are consolidated herewith:
Charles W. Payne and Carole B. Payne, docket No. 19934-94; and
Wayne G. Smith and Marie Smith, docket No. 10669-95.

[2] Brief amicus curiae was filed by <u>Neil D. Kimmelfield</u>, on behalf
of Ball, Janik & Novack, who are counsel for other similarly
situated taxpayers.

(Leslie) and Mattie J. Foster (Mattie), Charles W. Payne (Charles) and Carole B. Payne (Carole), and Wayne G. Smith (Wayne) and Marie Smith (Marie):

|                          | Docket No. | Deficiency |
|--------------------------|------------|------------|
| Leslie and Mattie Foster | 19932-94   | $16,303    |
| Charles and Carole Payne | 19934-94   | $13,670    |
| Wayne and Marie Smith    | 10669-95   | $9,675     |

These consolidated cases are before us on respondent's motion for summary judgment under Rule 121.[3] The issue for consideration is whether petitioners may exclude from gross income, under section 104(a)(2), amounts received from their employer in consideration for signing a general release agreement.

The disposition of a motion for summary judgment under Rule 121 is controlled by the following principles: (1) The moving party must show the absence of dispute as to any material fact and that a decision may be rendered as a matter of law; (2) the factual materials and the inferences to be drawn from them must be viewed in the light most favorable to the party opposing the motion; and (3) the party opposing the motion cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Rule 121; <u>Brotman v. Commissioner</u>, 105 T.C. 141 (1995).

---

[3] Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent's motion is based on a stipulation of facts and attached exhibits which are incorporated herein by this reference.

At the time the petitions were filed, Leslie and Mattie Foster resided in San Antonio, Texas; Charles and Carole Payne resided in Kissimmee, Florida; and Wayne and Marie Smith resided in Loveland, Colorado.

Prior to and during a portion of 1992, petitioners Leslie, Mattie, Charles, and Wayne were employed by the United Services Automobile Association (USAA). In 1992, each of them (hereinafter referred to as the participants) became eligible to participate in USAA's Special Retirement Offer (retirement program). To participate in the retirement program, which included the receipt of a single, lump-sum payment, each of the participants was required to sign a Special Retirement Offer Election Notification and General Release. The release agreements are identical but for the parties and the amounts of the payments.

The agreements provide in part as follows:

[Name] acknowledges that this payment is solely in exchange for the promises in his/her General Release and is not normally available under company policy to employees who resign. [Name] further acknowledges that such payment does not constitute an admission by the Released Parties of liability or of violation of any applicable law or regulation.

* * * [Name] agrees to release and discharge forever Released Parties from all causes of action, claims, demands, costs and expenses for damages which he/she now has, whether known or unknown, on account of his/her employment with USAA and its wholly owned subsidiaries and/or his/her retirement from employment with USAA and its wholly owned subsidiaries. His/her release includes, but is not limited to, any claims of discrimination on any basis, including race, color, national origin, religion, sex, age or handicap arising under any federal, state, or local statute, ordinance, order or law, including the Age Discrimination in Employment act, and any claim that the Released Parties, jointly or severally, breached any contract or promise, express or implied, or any term or condition of [Name]'s employment, and any claim for promissory estoppel arising out of [Name]'s employment with USAA and its wholly owned subsidiaries and any other issue arising out of his/her employment with USAA and its wholly owned subsidiaries and/or his/her retirement from such employment.

Leslie and Mattie signed the agreement on September 29, 1992; Charles signed the agreement on October 28, 1992; and Wayne signed the agreement on July 22, 1992.

In addition to the releases, the parties have stipulated that none of the participants had any preexisting claim of age discrimination, or other unlawful discrimination, against USAA, either formal or informal, written or oral, pending or inchoate, at the time the releases were signed.

In exchange for participating in the retirement program, each of the participants received payment from USAA in 1993, computed on the basis of time of service and rate of pay, in the following amounts:

| Participant | Amount |
| --- | --- |
| Leslie | $48,858 |
| Mattie | 14,300 |
| Charles | 53,055 |
| Wayne | 40,320 |

In an informational document provided to the participants, USAA refers to the lump-sum payments as "special transition pay", and advised the participants that all applicable payroll taxes would apply to the payments.  USAA reported the above amounts on the participants' respective W-2 wage statements.

Except as otherwise provided, gross income includes income from all sources.  Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  While section 61(a) is to be broadly construed, statutory exclusions from income must be narrowly construed.  Commissioner v. Schleier, 515 U.S. ___, 115 S. Ct. 2159, 2163 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include:

the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness.

Section 1.104-1(c), Income Tax Regs, provides:

(c) Damages received on account of personal injuries or sickness.  * * *  The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or

through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both: (1) through prosecution or settlement of an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. Commissioner v. Schleier, 515 U.S. at ___, 115 S. Ct. at 2166-2167; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995).

Where damages are received pursuant to settlement agreements, as is the case herein,[4] the nature of the claims that were the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

---

[4] In response to a concern of petitioners, we note that we consider the release agreements to be settlements or settlement agreements. See, e.g., Black's Law Dictionary at 1372 (6th ed. 1990) (defining "settle" as "A word of equivocal meaning; meaning different things in different connections, and the particular sense in which it is used may be explained by the context or the circumstances"). In any event, whatever the semantical description of the releases, the focus is on the actual terms of the documents.

Determination of the nature of the claim is factual. Bagley v. Commissioner, supra; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). The most important element is the intent of the payor. Robinson v. Commissioner, supra at 127.

Essential to petitioners' ability to satisfy the first requirement is the existence of claims "based upon tort or tort type rights". See supra p. 5. The parties and the amicus curiae have advanced extensive arguments as to whether such claims must have been valid claims that were asserted prior to the settlements. We are satisfied that the only requirement is that there be a claim which is bona fide, not necessarily valid, i.e., sustainable. Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Robinson v. Commissioner, supra at 126; Stocks v. Commissioner, supra at 10. In this connection, we note that we have held that claims for potential future personal injuries do not qualify for exclusion under section 104(a). Roosevelt v. Commissioner, 43 T.C 77 (1964); Starrels v. Commissioner, 35 T.C. 646 (1961), affd. 304 F.2d 574 (9th Cir. 1962). Such holdings imply that there must be an existing claim. Moreover, while it need not have been previously asserted, the absence of any knowledge of the claim on the part of the employer-payor obviously has a negative impact in determining the requisite

intent of the payment.[5]  Any problems in respect of these factors are resolved in this case by the stipulation of the parties that there was no preexisting claim based on age or other unlawful discrimination.  See supra p. 4.

Viewing the facts in the light most favorable to petitioners, see Kroh v. Commissioner, 98 T.C. 383, 390 (1992), it can be argued that the stipulations as to the absence of "pre-existing claim[s]" leave open the possibility of claims of discrimination based on the settlements themselves.  Such a possibility has been adverted to in Webb v. Commissioner, T.C. Memo. 1996-50, and Galligan v. Commissioner, T.C. Memo. 1993-605, although neither of these cases accepted such an argument as a ground for decision.  Whatever may be the merits of an assertion of such a window of opportunity, we see no basis for giving it any consideration herein.  Petitioners do no more than infer such an approach; they do not set forth any supporting allegations of fact in support thereof beyond their general assertions to which we now turn our attention.

Petitioners' basis for asserting that there are substantial issues of fact that require denial of respondent's motion is that they would offer the following evidence:

---

[5]  See Foster v. Commissioner, T.C. Memo. 1996-26.

(1)  Each of the participants was over 40 years of age at the time they executed the releases.

(2)  The only consideration for the payments received from USAA was the execution of the releases.

(3)  USAA did not treat the payment as compensation for retirement plan purposes.

(4)  USAA was engaged in a systematic violation of the Age Discrimination in Employment Act of 1967, Pub. L. 90-202, 81 Stat. 602 (current version at 29 U.S.C. secs. 621-634 (1988)) (ADEA), and age discrimination was its primary concern in requiring the participants to sign the release agreements.[6]

(5)  Each of the participants suffered personal injuries as a result of the discrimination practices of USAA.

The only specific factual assertion is that the participants are within the age group, i.e., over 40, entitled to claim the benefit of the ADEA.  However, it has been established that a mere allegation of membership in a protected class is insufficient to sustain a claim for exclusion under section 104(a).  See Starrels v. Commissioner, 35 T.C. at 648; Galligan v. Commissioner, supra.  Petitioners' other assertions are conclusory statements unsupported by specific facts as required

---

[6]  Petitioners make no claim that the participants did not sign the releases voluntarily as the documents recite.

by Rule 121. See <u>Abramo v. Commissioner</u>, 78 T.C. 154, 164 (1982).

Given the stipulations as to preexisting claims and in the absence of specificity in petitioners' allegations, the circumstances herein are such that respondent has made a prima facie case that the requirements for exclusion under section 104(a) as enumerated by <u>Commissioner v. Schleier</u>, <u>supra</u>, have not been satisfied. The ADEA broadly prohibits arbitrary discrimination in the workplace based on age. <u>Commissioner v. Schleier</u>, 515 U.S. at ___, 115 S. Ct. at 2162. Subject to certain defenses, the ADEA makes it unlawful for an employer to discharge any individual between the ages of 40 and 70 because of such individual's age. <u>Id.</u> at 2162. The ADEA provides for two types of damages: damages for lost wages and additional, liquidated damages where the employer's actions were willful. 29 U.S.C. secs. 216(b), 626(b) (1994). The ADEA does not permit a separate recovery of compensatory damages for typical tort remedies like pain and suffering or emotional distress. <u>Commissioner v. Schleier</u>, 515 U.S. at ___, 115 S. Ct. at 2162, 2165 n.6.

Petitioners seek to draw comfort from footnote 6 in <u>Commissioner v. Schleier</u>, 515 U.S. at ___, 115 S. Ct. at 2165, which suggests that, outside of the ADEA context, discrimination can result in intangible personal injuries. Petitioners do not

explain how they think they could benefit in this respect and, in any event, fail to set forth sufficient facts in respect of any such claim.

In addition to the inadequacies of petitioners' position previously discussed, we note that petitioners have the burden of proving the specific amounts of the payments allocable to claims of tort or tort-type damages for personal injuries. Failure to meet this burden results in the entire amount's being presumed not to be excludable. See Taggi v. United States, 35 F.3d at 96; Getty v. Commissioner, 91 T.C. 160, 175-176 (1988), affd. as to this issue, revd. on other issues 913 F.2d 1486 (9th Cir. 1990).[7] But see Lane v. United States, 902 F.Supp. 1439 (W.D. Okla. 1995). The releases make no allocation, and petitioners have set forth no facts upon which they would rely to prove an allocation. Indeed, the fact that the payments were based on time of service and rate of pay, as well as USAA's description of the amounts as "special transition pay", points in the direction of the payments having been severance pay rather than a payment for personal injury. See Webb v. Commissioner, T.C. Memo. 1996-50.

In sum, viewing the facts in a light most favorable to petitioners, Kroh v. Commissioner, supra, we conclude that respondent has made a prima facie case to support her motion for

---

[7] See also Whitehead v. Commissioner, T.C. Memo. 1980-508.

- 12 -

summary judgment and that petitioners have failed to come forward
with countervailing assertions having sufficient specificity to
cause us to hold that there is any material issue of fact which
requires a trial.  Under these circumstances, respondent is
entitled to summary judgment as a matter of law.  Rule 121(d);
Hibernia Nat. Bank v. Carner, 997 F.2d 94, 98 (5th Cir. 1993);
Abramo v. Commissioner, supra.[8]

Respondent's motions for summary judgment will be granted and decisions will be entered for respondent.

---

[8]  See also Daniels v. Commissioner, T.C. Memo. 1994-591.