Albert J. TAGGI and Ann
D. Taggi, Plaintiffs,

v.

The UNITED STATES of
America, Defendant.

No. 93 Civ. 1598 (GLG).

United States District Court,
S.D. New York.

Nov. 4, 1993.

McCullogh, Goldberger & Staudt (Charles
A. Bradley, of counsel), White Plains, NY, for
plaintiffs.

Mary Jo White, U.S. Atty., S.D.N.Y. (Judith L. Mogul, Asst. U.S. Atty., of counsel),
New York City, for defendant.

### OPINION

GOETTEL, District Judge.

Plaintiffs Albert J. Taggi and Ann D. Taggi ("the Taggis") commenced this action to recover $7,649.00 in income tax they claim to have overpaid for calendar year 1986. Specifically, plaintiffs seek to recover tax paid on a payment received by Mr. Taggi in connection with the termination of his employment. Defendant, the United States of America, now moves for summary judgment pursuant to Fed.R.Civ.P. 56.

**FACTS**

Plaintiff Albert Taggi ("Taggi") is a former employee of AT & T Communications, Inc. ("AT & T"). In December, 1985, Taggi, who had worked for AT & T for more than twen-

ty years, was advised that his employment as a second-level manager would be terminated as of January 15, 1986 as part of a significant reduction in AT & T's workforce. Taggi was offered a choice of two termination payment plans. Under one option, he would receive a lump sum termination payment equal to 3% of his base pay, multiplied by the number of years he had worked for AT & T, up to twenty. Under the second option, he would receive a lump sum payment of 5% of base pay, again multiplied by his years of service, up to twenty. AT & T expressly conditioned receipt of the higher payment on the signing of a Separation Agreement and Release which purported to be a "full legal release" and provided that the employee to be terminated give up "all claims ... and causes of action" relating to the employee's employment or termination, including but not limited to "any rights arising under federal, state or local laws prohibiting age, sex, race or any other forms of discrimination, or claims growing out of any legal restrictions on [AT & T's] right to terminate its employees." Taggi chose the second plan and signed the agreement. The Taggis filed a joint tax return for 1986 and included the full termination payment of approximately $49,500 in income.

In June, 1987, Taggi and eleven other terminated managers nevertheless filed suit against AT & T for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("the ADEA"). After an evidentiary hearing to determine whether the terminated managers had relied on misrepresentations by AT & T officials concerning the enforceability of the Separation Agreement's waiver provision, the District Court concluded that the releases were valid and that the managers had waived their rights to sue AT & T for age discrimination, and the Circuit Court affirmed. *See Bormann v. AT & T Communications, Inc.*, 875 F.2d 399, 400–401 (2d Cir.), *cert denied*, 493 U.S. 924, 110 S.Ct. 292, 107 L.Ed.2d 272 (1989).

On or about March 5, 1990, plaintiffs filed a timely claim for a refund of overpaid tax totalling $7,649.40 for 1986. Plaintiffs asserted that the amount they had received from AT & T in exchange for choosing the second termination payment option ($19,800) should have been excluded from their 1986 income as "damages received (whether by suit or agreement ...) on account of personal injuries or sickness" under § 104(a)(2) of the Internal Revenue Code. Taggi apparently claimed that the payment was for a release of his ADEA claims against AT & T, and was thus not taxable. The Internal Revenue Service ("the IRS") disallowed the claim in full by letter dated August 23, 1991. Plaintiffs filed an appeal which the IRS denied by letter dated September 15, 1992. Plaintiffs then commenced this action.

## ANALYSIS

Section 61 of the Internal Revenue Code states that except as otherwise provided, "gross income means all income from whatever source derived." 26 U.S.C. § 61(a). Unless the Code specifically excludes an accession to wealth from taxation, the taxpayer must include it in income. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Exclusions from gross income have been narrowly construed. *Kovacs v. Commissioner*, 100 T.C. 124, 1993 WL 46512 (1993); *United States v. Centennial Savings Bank*, 499 U.S. 573, 111 S.Ct. 1512, 113 L.Ed.2d 608 (1991); *Commissioner v. Jacobson*, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949).

Section 104 of the Internal Revenue Code is entitled "Compensation for Injuries or Sickness." Plaintiff claims an exclusion from income under § 104(a)(2), which states that "the amount of any damages received (whether by suit or agreement and whether as lump sums or periodic payments) on account of personal injuries or sickness" is to be excluded from gross income. Under Treasury Regulation § 1.104–1(c) " 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Section 104 also provides that § 104(a)(2) "shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness."

## I. Damages

■ The first question is whether the payment constitutes damages under § 104(a)(2). Treasury Regulation § 1.104–1(c) defines damages as "an amount received ... through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." The question thus becomes whether the incremental amount paid to Taggi by AT & T should be considered a settlement. Plaintiff contends that he received the $19,800 from AT & T in exchange for releasing his rights to sue under state and federal laws prohibiting employment discrimination, and specifically for waiving his ADEA claims, and that this constitutes a settlement. Defendant argues that the payment was not for the "settlement" of a specific claim; it was consideration for plaintiff's waiving his statutory right to seek compensation for *any* potential injury. A claim must be asserted before it can be settled; plaintiff waived all claims before asserting them, so this cannot be a damage settlement by definition.

Additionally, defendant argues that since under the agreement Taggi acknowledged "that AT & T has not discriminated against me" or "breached any contract with me," and since the parties agreed that the payment was not an acknowledgement of liability, the payment is too remote from any conceivable injury plaintiff might have suffered to be considered damages. The agreement itself stipulates that Taggi gave up any rights he might have "under various state and federal laws that prohibit employment discrimination on the basis of age, sex, race, color, national origin, religion, handicap or veteran status...." It provides that Taggi released AT & T from "any and all claims ... arising out of [his] employment or termination.... This includes, but is not limited to, [employment discrimination claims]." This sounds much more like a waiver of general rights than like the language of a settlement, which would be addressed to specific claims.

## II. Personal Injury

■ Even if the Separation and Release payment does constitute a settlement, it would have to have been received on account of personal injuries in order to be excludable under § 104(a)(2). As defendant correctly points out, no portion of the payment Taggi received for signing the release was allocated to any specific potential claim at the time of the agreement. Plaintiff now contends that he waived ADEA claims as well as claims "under any other laws." Plaintiff argues that to the extent that ADEA claims are not excludable as personal injury damages, the release encompasses other, unspecified tort-like claims, which justifies exclusion of the payment from gross income.

■ We agree with defendants that plaintiffs may not simply pick and choose between various potential claims included in a general release for the purpose of excluding the payment made for that release from gross income. Since the release was broad and inclusive, it encompassed any claims plaintiff might have had for breach of contract as well as traditional tort-type claims. Where a settlement agreement is silent as to what portion, if any, of a settlement payment should be allocated towards damages excludable under 26 U.S.C. § 104(a)(2), the courts will not make that allocation for the parties. *See, e.g. Villaume v. United States*, 616 F.Supp. 185, 190 (D.Minn.1985) ("The parties did not specify at the time of the settlement which portion of the settlement was attributable to lost income or business damages, and which portion was attributable to personal injury damages. The Court will therefore treat the entire payment as income."); *Whitehead v. Commissioner*, 41 T.C.M. (CCH) 365 (1980) (where "settlement was made in consideration of a variety of potential claims, including contract as well as tort claims and the release ... did not allocate the payment among these claims.... the entire amount of the settlement must be included in gross income.")

## III. The ADEA

In *United States v. Burke*, — U.S. —, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), a Title VII case, the Supreme Court departed from the approach followed by the Third, Sixth and Ninth Circuits, which had concluded that damages awarded in age discrimination suits or settlements of damage awards could properly be excluded from income under § 104(a)(2). *See, e.g. Redfield v. Insurance Co. of North America*, 940 F.2d 542 (9th

Cir.1991); *Pistillo v. Commissioner*, 912 F.2d 145 (6th Cir.1990); *Rickel v. Commissioner*, 900 F.2d 655 (3d Cir.1990). The Supreme Court in *Burke* adopted a remedy based approach; the Court looked at the nature of the remedial scheme available under the statute, rather than at the nature of the injury suffered by the victim. The Court concluded that in order to come within the § 104(a)(2) exclusion, taxpayers "must show that ... the legal basis for their recovery ... redresses a tort-like personal injury." *Burke*, —— U.S. at ——, 112 S.Ct. at 1872. Here, both parties go to great lengths to argue that the reasoning relied on in *Burke* supports their respective claims. A few months ago, two courts considered the effect of *Burke* on settlements of litigations involving ADEA claims. The United States District Court for the Northern District of Florida in *Malaszewski v. United States*, 827 F.Supp. 1553 (N.D.Fla.1993), determined that *Burke* would also apply to ADEA cases and that consequently settlement proceeds were not excludable. Later the same month the Tax Court in *Downey v. Commissioner*, 100 T.C. No. 40, 1993 WL 231740 (1993), in a supplemental opinion, decided differently.[1] However, since we do not agree that plaintiff has been injured within the parameters of the ADEA, we need not reach the issue of whether damages received under the ADEA can qualify as personal injury damages and fall within the § 104(a)(2) exclusion.

"To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Summary judgment is appropriate when, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). Here, even if we conclude that plaintiff's receipt of payment in exchange for waiving his rights to sue constitutes a settlement, we cannot agree that any damages received were in connection with a personal injury. The nature of the rights being waived was all inclusive; even plaintiff has conceded that he waived his rights to sue under discrimination and "any other laws." Nor can we agree that the fact that Taggi tried and failed to sue on an ADEA cause of action establishes that the additional 2% of base pay that went into calculation of his termination payment was made in exchange for his ADEA rights, and that this is somehow tantamount to settlement of an actual ADEA claim. Drawing all inferences in favor of plaintiff still leaves us somewhere short of an exclusion under § 104(a)(2).

Thus, we grant defendant's motion for summary judgment. The clerk will enter judgment for defendant.

**SO ORDERED.**

---

1. Prior to *Burke* the Tax Court had ruled in *Downey v. Commissioner*, 97 T.C. 150, 1991 WL 140900 (1991), that an airline pilot who had sued his former employer under the ADEA and had settled for a substantial sum (one-half of which was considered liquidated damages and the other of which was non-liquidated damages) could exclude the amount in its entirety. Because of the *Burke* decision, the Commissioner asked for a supplementary opinion.