T.C. Memo. 1997-315


UNITED STATES TAX COURT


FERDINAND A. & MARLA MORABITO, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10687-95, 15202-95,    Filed July 9, 1997.
15203-95, 15204-95.


<u>Edward J. Shapiro</u>, for petitioners.

<u>Patricia A. Riegger</u>, for respondent.


MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined deficiencies in
petitioners' 1992 Federal income taxes as follows:

---

[1] Cases of the following petitioners are consolidated
herewith:  William J. Prechtl and Roberta E. Prechtl, docket No.
15202-95; Joseph J. Chiffone, docket No. 15203-95; Douglas R.
Gamble and Joan A. Gamble, docket No. 15204-95.

| Petitioners | Deficiency |
|---|---|
| Ferdinand A. and Marla Morabito | $19,462 |
| Joseph J. Chiffone | 13,982 |
| Douglas R. and Joan A. Gamble | 30,288 |
| William J. and Roberta E. Prechtl | 21,248 |

This matter is before the Court on Respondent's Motions for Summary Judgment pursuant to Rule 121.[2]  In each case, petitioners submitted in opposition a so-called "Petitioner's Opposition Motion", which was filed simply as "Petitioner's Opposition".  The cases were consolidated, and each presents the same issue.  That is, whether an amount paid to an employee of IBM upon his severance therefrom conditioned upon his signing of a release relinquishing all existing claims against IBM is excludable from income under section 104(a)(2).

Petitioners are Ferdinand A. and Marla Morabito, Joseph J. Chiffone, Douglas R. and Joan A. Gamble, and William J. and Roberta E. Prechtl.  Petitioners lived in Hicksville, NY, Holbrook, NY, Locust Valley, NY, and Holtsville, NY, respectively, when their petitions in these cases were filed.  References to petitioners will be to the male petitioners.

Prior to and during a portion of 1992, petitioners were employees of IBM.  In 1992, they each signed a document entitled

---

[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

"General Release and Covenant Not to Sue" (the Release).  In
exchange, they received a lump sum from IBM, consisting of 2
weeks' salary for every year of service.  On their 1992 returns,
they each excluded the lump-sum payment from gross income.  They
each attached Form 8275, Disclosure Statement, to their 1992
returns, asserting that the lump-sum amount was excluded because
it was "a payment reeived [sic] in exchange for the release
and/or settlement of tort-type rights, as part of the former
employer's ITO II Program."[3]

IBM instituted the ITO II Program as a method of reducing
its workforce.  Employees who participated in the program
resigned or retired from IBM, receiving lump-sum cash payments
and other benefits in exchange for signing the Release.  If an
ITO II participant was subsequently rehired by IBM or any of its
subsidiaries, he was required to repay a prorated portion of the
ITO II payment.

The Release provides in pertinent part:

> In exchange for the sums and benefits which you will
> receive pursuant to the terms of the Modified and
> Extended Individual Transition Option Program (ITO II
> Program), [individual petitioner] agrees to release
> International Business Machines Corporation
> (hereinafter "IBM") from all claims, demands, actions
> or liabilities you may have against IBM which are
> related to your employment with IBM or the termination
> of that employment.  * * *  You also agree that this
> release covers, but is not limited to, claims arising

---

[3] In docket No. 15204-95, involving petitioners Douglas and
Joan Gamble, "reeived" was correctly shown as "received".

from the Age Discrimination in Employment Act of 1967, as amended, Title VII of the Civil Rights Act of 1964, as amended, and any other federal or state law dealing with discrimination in employment on the basis of sex, race, national origin, religion, disability, or age. You also agree that this release includes claims based on theories of contract or tort, whether based on common law or otherwise.  * * *

* * * * * * *

You acknowledge and agree that:

1.  The benefits provided pursuant to the ITO II Program constitute consideration for this release, in that there are benefits to which you would not have been entitled had you not signed this release.

* * * * * * *

3.  This release does not waive any claims you may have which arise after the date you sign this release.

None of the petitioners filed a claim of any type against IBM either prior to signing the Release or at any other time.

Section 104(a)(2) provides that "gross income does not include * * * the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  Sec. 1.104-1(c), Income Tax Regs. explains that the term "damages received" "means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Petitioners' "Oppositions" do not allege, nor does the record otherwise show, that any petitioner ever made any formal or informal claim against IBM.  It therefore appears that there were

no settlements for IBM and petitioners to reach. Petitioners "waived all claims before asserting them, so this cannot be a damage settlement by definition." Taggi v. United States, 835 F. Supp. 744, 746 (S.D.N.Y. 1993), affd. 35 F.3d 93 (2d Cir. 1994).

However, even if we assume that the signed Releases represent settlement agreements, for the awards to be excludable under section 104(a)(2), petitioners must demonstrate (1) "that the underlying cause of action giving rise to the recovery is 'based upon tort or tort type rights'" and (2) "that the damages were received 'on account of personal injuries or sickness.'" Commissioner v. Schleier, 515 U.S. 323, 337 (1995).

1. Underlying cause of action

The nature of the claim controls whether a damage amount is excludable from gross income. Stocks v. Commissioner, 98 T.C. 1, 10 (1992). Determining the nature of the claim is a factual matter. Sodoma v. Commissioner, T.C. Memo. 1996-275. If there is no express language in the agreement explaining why the settlement amount is being paid, the most important factor is "the intent of the payor". Stocks v. Commissioner, supra.

The best indicator of the intent of the payor in this case is the language of the Release. The Release freed IBM from "all claims, demands, actions or liabilities you may have against IBM which are related to your employment with IBM or the termination of that employment." The Release covered ADEA claims, employment

discrimination claims, and "claims based on theories of contract or tort."  The Release also provided that the benefits received for signing "constitute consideration for this release, in that there are benefits to which you would not have been entitled had you not signed this release."  This language indicates that IBM considered the payments to petitioners as compensation for release of all potential claims, including, but not limited to, tort claims.  This is supported by IBM's inclusion of each award in petitioners' W-2 forms.  There is nothing in the Release to show that it was tailored to a specific incident or named individual.  The Release is so broad it covers any potential existing claim; it is not designed to compensate for a specific tort violation except incidentally.

## 2.  Damages received

Petitioners must also demonstrate that "the damages were received 'on account of personal injuries or sickness.'" Commissioner v. Schleier, supra at 337 (quoting sec. 104(a)(2)). Where a settlement agreement contains a number of claims, does not allocate the portion excludable under section 104(a)(2), and there is no other evidence that a specific claim was meant to be singled out, the court must consider the entire amount taxable. Taggi v. United States, supra at 746;  Sodoma v. Commissioner, T.C. Memo. 1996-275.  Cf. Stocks v. Commissioner, supra at 17. In this case, there was no division of the award by the parties.

Petitioners have presented no evidence that a portion of the award was intended to be excluded.  Therefore, the entire amount must be included in gross income.

Petitioners contend that they were singled out by IBM because they could have filed age/job discrimination claims. They contend that IBM purposely intimidated and harassed them in order to reduce its work force; ultimately they were told to take the buy-out or risk losing their jobs.  They allege that they were then forced to sign the Release before they were paid.  The ITO II Program paid 2 weeks per year of service versus 1 week per year under IBM's existing ITO reduction in force program. Petitioners claim that the additional week represented payment for personal injury.

While petitioners may or may not have had actionable claims against IBM, at issue here is the excludability of the ITO II payments.  When petitioners signed the Releases, they had not brought suits against IBM.  There is no evidence that they even talked to IBM about doing so.  Regardless of whether any of them may have had a bona fide grievance against IBM, each accepted IBM's offer, which IBM sweetened by adding an extra week's pay to the formula for computing the amount payable.  And although petitioners may have thought they were settling claims, they presented no evidence that IBM shared that belief.  The ITO II payments more fully resemble severance pay than settlements.

This conclusion is supported by the Release itself, which was not tailored specifically for petitioners, but was used generally for the ITO II Program.  See <u>Keel v. Commissioner</u>, T.C. Memo. 1997-278; <u>Webb v. Commissioner</u>, T.C. Memo. 1996-50.  It is also supported by the amounts paid, which were based on years of service rather than specific injury.

Petitioners also argue that IBM's actions caused personal injuries to petitioners after they signed the Release.  This argument does not help petitioners, since the Release covered only existing claims against IBM.  Petitioner "agrees to release [IBM] from all claims * * * <u>you may have</u> against IBM which are related to your employment with IBM".  (Emphasis added.)  See <u>id.</u>

Petitioners have failed to demonstrate that a material issue of fact remains for trial.  They have not shown that the amounts received under the ITO II program were paid in settlement of tort claims, or that any portion was "received 'on account of personal injuries or sickness.'"  <u>Commissioner v. Schleier</u>, <u>supra</u> at 337 (quoting sec. 104(a)(2)).

<u>Respondent's motions for summary judgment will be granted, and decisions will be entered for respondent.</u>