T.C. Summary Opinion 2006-78

UNITED STATES TAX COURT

CHARLES LEONARD BRADEN AND
JOICE STIEBER BRADEN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6736-05S.          Filed May 11, 2006.

Charles Leonard Braden and Joice Steiber Braden,
pro se.

Stephen P. Baker, for respondent.

WHALEN, Judge:  This case was filed pursuant to
section 7463 of the Internal Revenue Code as in effect
when the petition was filed.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue
Code in effect for the year in issue.  The decision to be

entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined a deficiency of $6,268 in petitioners' income tax for taxable year 2002. The case is before the Court at this time to decide a motion for summary judgment filed by respondent. Petitioners resided in Emery, South Dakota, at the time they filed their petition.

The principal adjustment in the notice of deficiency is an increase of $30,199 in petitioners' gross income. According to the notice, this adjustment is based on a Form 1099-Misc, Miscellaneous Income, issued by the Campbell v. State Farm Settlement Fund showing that $30,199 had been paid to Joice Stieber Braden (petitioner) as "other income" during 2002.

As a consequence of the above adjustment, respondent determined a decrease in the medical deductions claimed on Schedule A, Itemized Deductions, of petitioners' return for taxable year 2002. Respondent also determined that petitioners had substantially understated their income tax for 2002 within the meaning of section 6662(d) and that petitioners are liable for an accuracy-related penalty of $1,254 under section 6662(a).

Respondent's motion for summary judgment concedes that there was reasonable cause for the understatement of tax required to be shown on petitioners' 2002 return and that petitioners acted in good faith. Accordingly, respondent concedes, pursuant to section 6664(c), that petitioners are not liable for the accuracy-related penalty of $1,254. In light of that concession, respondent's motion is deemed to be a motion for partial summary judgment.

The petition asserts that $30,000 of the amount received from the Campbell v. State Farm Settlement Fund "was for personal injury" and is not includable in gross income. The petition refers to the fact that this amount was received in connection with the settlement of Campbell v. State Farm Mut. Auto. Ins. Co., CIV 99-505-TUC, D. Ariz. (hereafter referred to as Campbell v. State Farm) a lawsuit that expressly required participants to have "sustained [personal] injury". The petition asserts that the remainder, $199, "was for interest". The petition states that petitioners had "sent $32.86 to the IRS as payment for the additional taxes for $199."

According to respondent, the record "clearly shows that Campbell v. State Farm was not a personal injury suit, but was solely a complaint for compensatory damages, plus interest and fees, directly and proximately arising from

State Farm's breach of contract." Respondent argues: "payments made in settlement of breach of contract suits are specifically excluded from the definition of damages which might qualify for exclusion under the provisions of I.R.C. sec. 104(a)(2)." Thus, according to respondent, "none of the payments made in settlement of Campbell v. State Farm are [sic] excludable from gross income under section 104(a)(2)."

Respondent's motion for summary judgment explains that

> Campbell v. State Farm was a class action lawsuit in which it was alleged that State Farm breached its insurance contracts with policyholders by failing to pay Uninsured Motorist/Underinsured Motorist (UM/UIM) benefits under more than one insurance policy purchased from State Farm on different vehicles owned by the individuals involved, in a practice referred to as "policy stacking."

We note that the complaint filed in Campbell v. State Farm had asserted that "Defendant State Farm's refusal to allow Plaintiff to 'stack' multiple uninsured and/or underinsured motorist coverages provided by State Farm policies constitutes a breach of contract."

Respondent's motion does not rely on the settlement agreement that was entered into by the parties to Campbell v. State Farm. Respondent's motion refers to a document entitled "Notice of Class Action, Proposed Settlement,

Opt Out Period, Fairness Hearing and Release" (hereinafter notice of class action) that was filed in Campbell v. State Farm before the settlement was approved by the court. That document makes the following reference to the settlement agreement:

> The Settlement Agreement on file with the Court describes in more detail the claims that class members who remain in the class will give up if this Court approves the settlement. If you would like a copy of the Settlement Agreement, please contact Class Counsel.

The settlement agreement is not included in the record of this case at this time.

The notice of class action states that, as a condition of the settlement of Campbell v. State Farm, State Farm had deposited $11,250,000 into trust to be used to pay members of the class. It also states that each class member was to receive an equal share of the fund, not to exceed $30,000 per class member, plus interest. According to the notice of class action, a class member was required to submit a proof of claim questionnaire and certain other materials in order to be eligible to receive a payment. The record does not contain the proof of claim questionnaire petitioner submitted.

Petitioners filed an objection to respondent's motion on January 6, 2006, and a supplement to their objection on

February 7, 2006. We learn from those papers, and the documents attached thereto, that petitioner was injured in an automobile accident on November 11, 1983. The driver of the other car fled from the scene of the accident. By letter dated August 22, 1985, petitioner's attorney made demand on State Farm for $75,000 to settle petitioner's claim for continuing medical expenses. In response, State Farm paid to petitioner $15,000, the policy limit under one of petitioner's two automobile insurance policies, but it refused to pay anything under a second policy. Apparently, that payment of $15,000 was made sometime between July 24, 1982, and July 20, 1988, and is not a part of the $30,000 which is at issue in the instant case.

Subsequently, petitioner became a party to the class action suit captioned Campbell v. State Farm. As described above, that suit challenged the refusal of State Farm to allow customers to "stack" multiple uninsured and/or underinsured motorist coverages provided under State Farm policies. According to the notice of class action, the class of persons covered by the lawsuit is defined as follows:

> a. Each person (and each person who has a claim for the wrongful death of a person) who was insured under multiple automobile liability insurance policies that: (1) were purchased by one insured on difference vehicles; (2) included

UM and/or UIM coverage; (3) were delivered or issued for delivery in the State of Arizona by State Farm with respect to a motor vehicle registered or principally garaged in Arizona; and (4) were issued or renewed after July 24, 1982, the effective date of the 1982 amendments to A.R.S. sec. 20-259.01;

b. Who sustained injury (including fatal injuries) as a result of the fault of an uninsured or underinsured motorist while occupying a motor vehicle that is an insured vehicle under one of the policies described in paragraph (a) above or a non-owned vehicle that is described on the declarations page of an insurance policy providing UM or UIM coverage;

c. Whose date of loss occurred after the issuance or renewal of the policies described in paragraph (a); and

d. Who was paid, at any time between the date of loss described in paragraph (c) above and July 20, 1988, the UM or UIM limits on one automobile liability policy issued by State Farm but who did not receive payment from State Farm under any other UM or UIM coverage provided by another policy described in paragraph (a) above.

Thus, participation in the class action suit was expressly limited to those: (1) Who held multiple automobile liability insurance policies issued by State Farm; (2) who had "sustained injury (including fatal injuries)" as a result of the fault of an uninsured or underinsured motorist while occupying a motor vehicle that was insured under one of the policies; and (3) who had been paid the uninsured motorist/underinsured motorist limits on only one of the State Farm policies.

Campbell v. State Farm was settled by the parties to that suit in late 2001. The settlement agreement was approved by the District Court in an amended final judgment entered on November 27, 2001. Petitioner received her share of the settlement proceeds, $30,199, in 2002. The record of this case does not contain the release that, we assume, petitioner executed in return for the payment.

The underlying issue is whether petitioners' gross income for taxable year 2002 should be increased by $30,199, the amount determined in the notice of deficiency. As noted above, petitioners acknowledge in their petition that they had received $199 of that amount as "interest", and they state that they had "sent $32.86 to the IRS as payment for the additional taxes for $199." Thus, petitioners concede in their petition that their gross income for 2002 should be increased by $199 of the amount determined in the notice of deficiency. Respondent's motion for summary judgment will be granted as to that amount.

As to the bulk of the increase in gross income determined in the notice of deficiency, viz $30,000, the issue raised in the petition is whether that amount qualifies as damages received "on account of personal

physical injuries or physical sickness", within the
meaning of section 104(a)(2).  As to this portion of the
adjustment, we find that respondent has failed to carry
his burden of showing that there are no material facts in
dispute and that he should prevail as a matter of law.
See, e.g., Sundstrand Corp. v. Commissioner, 98 T.C. 518,
520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  See also
Rule 121(a) and (b) of the Tax Court Rules of Practice and
Procedure.  Hereinafter, all Rule references are to the
Tax Court Rules of Practice and Procedure.  Accordingly,
we will deny respondent's motion for summary judgment as
to the $30,000 amount that petitioners claim is excludable
from income pursuant to section 104(a)(2) as damages
received on account of personal injuries.  In deciding
respondent's motion, we have viewed all factual inferences
in the light most favorable to petitioners.  See Speltz v.
Commissioner, 124 T.C. 165 (2005); Preece v. Commissioner,
95 T.C. 594, 597 (1990).

Section 104(a)(2) excludes from gross income "the
amount of any damages (other than punitive damages)
received (whether by suit or agreement and whether as lump
sums or as periodic payments) on account of personal
physical injuries or physical sickness".  Amounts are
excludable from gross income under section 104(a)(2) only

when (1) the underlying cause of action giving rise to the recovery is based on tort or tortlike rights and (2) the damages are received on account of personal injuries or sickness. See, e.g., O'Gilvie v. United States, 519 U.S. 79 (1996); Commissioner v. Schleier, 515 U.S. 323, 336-337 (1995); sec. 1.104-1(c), Income Tax Regs.

The term "damages received", as used in section 104(a)(2), is defined as an amount received "through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Sec. 1.104-1(c), Income Tax Regs. If the damages are received pursuant to a settlement agreement, as in this case, the nature of the claim that was the basis for the settlement controls whether damages are excludable under section 104(a)(2). See United States v. Burke, 504 U.S. 229, 237(1992); Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

The determination of the nature of a claim is a question of fact and is generally made by reference to the settlement agreement in light of the surrounding circumstances. See, e.g., Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part and remanded on another issue 70 F.3d 34 (5th Cir. 1995);

Seay v. Commissioner, 58 T.C. 32, 37 (1972). The ultimate character of the payment hinges on the payor's dominant reason for making the payment. See Fono v. Commissioner, 79 T.C. 680, 696 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984); Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21; Amos v. Commissioner, T.C. Memo. 2003-329.

As stated above, respondent's motion for summary judgment asks the Court to hold that "none of the payments made in settlement of Campbell v. State Farm are [sic] excludable from gross income under section 104(a)(2)." Respondent's motion argues that this holding is required because Campbell v. State Farm was an action for breach of contract. According to respondent, "payments made in settlement of breach of contract suits are specifically excluded from the definition of damages which might qualify for exclusion under the provisions of I.R.C. sec. 104(a)(2)." Thus, respondent asks the Court to hold that the settlement proceeds at issue do not qualify for exclusion under section 104(a)(2) solely because the lawsuit which was settled, Campbell v. State Farm, was a breach of contract suit.

We disagree. The type of lawsuit, by itself, does not determine whether a payment in settlement of the

lawsuit qualifies, or does not qualify, as "damages received * * * on account of personal injuries" under section 104(a)(2).  Rather, it is the nature of the taxpayer's claim underlying the settlement payment that controls.  United States v. Burke, supra at 237.  In order to come within section 104(a)(2), the taxpayer must show that the legal basis for the recovery  redresses a tort or tortlike personal injury.  The fact that the lawsuit is for breach of contract, by itself, does not foreclose the possibility that the taxpayer's claim is for personal injury.

To characterize the proceeds of litigation, the test, simply stated, is:  "In lieu of what were the damages awarded?"  Tribune Publg. Co. v. United States, 836 F.2d 1176, 1178 (9th Cir. 1988); Raytheon Prod. Corp. v. Commissioner, 144 F.2d 110, 113 (1st Cir. 1944), affg. 1 T.C. 952 (1943).  In Raytheon Prod. Corp. v. Commissioner, supra at 113, the court held that "The test is not whether the action was one in tort or contract but rather the question to be asked is 'In lieu of what were the damages awarded?'"  See also Milenbach v. Commissioner, 318 F.3d 924, 931-34 (9th Cir. 2003) (whether a portion of the proceeds from settlement of eminent domain action should be characterized as taxable lost profits), affg. in part,

revg. in part and remanding 106 T.C. 184 (1996); <u>Getty v. Commissioner</u>, 913 F.2d 1486, 1490 (9th Cir. 1990) (whether proceeds of a settlement should be characterized as a gift or taxable income), revg. 91 T.C. 160 (1988).

After submitting the motion for summary judgment, respondent requested and was granted leave to file a memorandum of points and authorities in support of respondent's motion for summary judgment (herein referred to as memorandum). In the memorandum, respondent makes three arguments in further support of his position that none of the payments petitioner received in settlement of <u>Campbell v. State Farm</u> is excludable from gross income under section 104(a)(2).

The first argument in respondent's memorandum is that petitioner's tort and contract claims actually were time barred under the applicable statutes of limitations in Arizona before the complaint in <u>Campbell v. State Farm</u> was filed. Respondent points out that <u>Campbell v. State Farm</u> "was not filed until October 8, 1999--approximately sixteen years after the accident and fourteen years after the alleged breach." According to respondent, this was well after both the 2-year period of limitations applicable to personal injury suits and the 6-year period of limitations applicable to "any cause of action which

she may have had against her insurance provider, for uninsured or under-insured motorist (UM/UIM) coverage". Thus, respondent argues, petitioner's "personal injury tort claims had long since expired by operation of law prior to 1999 when the Campbell class action case was filed." Respondent cites Greer v. United States, 207 F.3d 322, 327 (6th Cir. 2000), and Dickerson v. Commissioner, T.C. Memo. 2001-53, for the proposition that a taxpayer's tort claim cannot be taken into account under section 104(a)(2) unless "the claim existed at the time of the settlement". Since petitioner had no extant tort claim when Campbell v. State Farm was filed, respondent argues, no part of the settlement payment is excludable under section 104(a)(2).

Respondent's argument does not answer the obvious question why the payor, State Farm, gave $30,199 to petitioner to settle contract and/or tort claims that were time barred under the applicable statutes of limitations. Respondent's memorandum touches on this question when it states: "the fact that * * * [petitioner] received partial payment from the insurer between the period July 24, 1982 and July 20, 1988 somehow entitled her to participate as a class member in Campbell v. State Farm". (Emphasis supplied.) This unanswered question goes to the

intent of the payor, which is the most important factor in determining "in lieu of what was the settlement amount paid." See, e.g., <u>Bagley v. Commissioner</u>, 105 T.C. at 406; <u>Stocks v. Commissioner</u>, 98 T.C. 1, 10-11 (1992).

Neither respondent's memorandum nor the record in this case answers this question or permits the Court, in the context of deciding respondent's motion for summary judgment which requires the Court to draw all factual inferences in petitioners' favor, to find that State Farm did not intend the settlement payment to satisfy petitioner's tort claims, at least in part. Even if, as argued by respondent, prosecution of the claims was barred by the statutes of limitations in Arizona, we believe that the claims were nevertheless extant. Clearly, petitioner's claims are unlike the "Claims for potential future personal injuries" which the court in the case cited by respondent, <u>Greer v. United States</u>, <u>supra</u> at 327 said "are insufficient." Moreover, the nature of petitioner's claims, and not the validity of the claims, controls whether a payment in settlement thereof is excludable under section 104(a)(2). See, e.g., <u>Robinson v. Commissioner</u>, 102 T.C. at 126; <u>Stocks v. Commissioner</u>, <u>supra</u> at 10.

The second argument in respondent's memorandum is that there is no allegation in the complaint filed in Campbell v. State Farm of any physical injuries as a result of the insurer's breach of contract and, thus, no allegation of "a direct link between personal injuries and the recovery of damages, as required by Schleier v. Commissioner [sic], 515 U.S. 323 (1995)". As discussed above, however, the complaint expressly limits membership in the class of plaintiffs to persons who had sustained injury through the fault of an uninsured and/or underinsured motorist, and who had not been paid the uninsured and/or underinsured motorist coverage limits under one or more automobile liability insurance policies issued by State Farm. In this situation, it would seem that the measure of damages of each class member in Campbell v. State Farm would take into account his or her unpaid tort claims. In any event, we cannot fully evaluate the allegations of the complaint filed in Campbell v. State Farm and the settlement of that case without reviewing the settlement agreement and other documents from the case, such as the proof of claim questionnaire and the release petitioner submitted.

The third argument in respondent's memorandum is that there is no allocation of the settlement payment to tort

claims and the only reference in the record to specific claims is found in the section of the notice of class action entitled "Release". That section states, in part, as follows:

> If the Court approves the proposed settlement, and if you are a class member who did not timely and properly request exclusion from the class, you will release (give up) all claims against State Farm, its parents, predecessors, and subsidiaries that have been or could have been asserted in this lawsuit, and all claims known or unknown arising from the allegations of the complaint as described in the Settlement Agreement on file with the Court.

As mentioned above, the settlement agreement is not in the record of this case. Nevertheless, respondent argues that the above language "cannot, as a matter of law, include the petitioner's statute-barred tort claims from 1983." We also note that the release that petitioner may have signed is not in the record of this case.

Furthermore, respondent argues, "the absence of any settlement allocation between specific claims, would still render the entire damage award taxable." In support of that argument, respondent cites Taggi v. United States, 835 F. Supp. 744, 746 (S.D. N.Y. 1993), affd. 35 F.3d 93 (2d Cir. 1994), and Morabito v. Commissioner, T.C. Memo. 1997-315. In both cases, the taxpayer had accepted a payment in connection with the termination of his

employment and had executed a comprehensive, general release of all claims against the employer. See Morabito v. Commissioner, supra; Taggi v. United States, supra at 745. In each case, the court rejected the taxpayer's attempt to exclude all or a portion of the payment from income under section 104(a)(2). Neither taxpayer had made a claim against the employer before accepting the payment, and both courts held that, accordingly, there was no settlement of a specific claim but merely a waiver of general rights. See Morabito v. Commissioner, supra; Taggi v. United States, supra at 746. Both courts further held that the lack of any allocation of the payment to damages excludable under section 104(a)(2) required the entire amount to be included in income. See Morabito v. Commissioner, supra; Taggi v. United States, supra at 746. In Morabito we stated the legal principle as follows:

> Where a settlement agreement contains a number of claims, does not allocate the portion excludable under section 104(a)(2), and there is no other evidence that a specific claim was meant to be singled out, the court must consider the entire amount taxable. * * *

The instant case is much different. Petitioner had made a formal claim against State Farm for damages incurred in an automobile accident, and State Farm paid an amount limited to the motorist/underinsured motorist

limits under one of petitioner's two State Farm policies. Subsequently, petitioner joined Campbell v. State Farm, a lawsuit of like individuals who sought to challenge the refusal of State Farm to allow "stacking" of insurance policies. In effect, petitioner sought to obtain additional payment for the damages incurred in her automobile accident equal to the uninsured motorist/ underinsured motorist coverage under her second State Farm policy.

Respondent's arguments fail to show that the payor, State Farm, did not intend any part of the $30,000 settlement payment as damages for the personal injuries petitioner suffered in connection with her automobile accident. First, the record does not include the settlement agreement entered into by the parties to Campbell v. State Farm. We can make no definitive finding about the intent underlying State Farm's settlement payments to petitioner and the other participants in the class action suit Campbell v. State Farm without that document. Second, each member of Campbell v. State Farm had an unpaid tort claim against State Farm. By definition, class membership in Campbell v. State Farm was specifically limited to persons, like petitioner, who were insured under multiple State Farm policies and who

had sustained uncompensated personal injuries in a motor vehicle accident with an uninsured or underinsured motorist. Furthermore, each class member was required to submit a proof of claim package as to those facts in order to participate in the settlement. It is reasonable to infer that State Farm intended the settlement to satisfy those tort claims. Respondent has not shown otherwise.

After considering respondent's motion for summary judgment and respondent's memorandum, we are unable to find that no part of the $30,000 paid by State Farm and received by petitioner in settlement of Campbell v. State Farm was attributable to the personal injuries petitioner suffered in connection with her automobile accident. Accordingly, as mentioned above, we will deny respondent's motion for summary judgment as to the $30,000 on the ground that, as to that amount, respondent has failed to carry his burden of showing that there are no material facts in dispute and that he should prevail as a matter of law. See Rule 121(a) and (b).

On the basis of the foregoing,

<u>An appropriate order</u>

<u>granting respondent's motion</u>

<u>for summary judgment in part</u>

<u>and denying respondent's motion</u>

<u>for summary judgment in part</u>

<u>will be issued</u>.